CARL A. PROCTOR, ET AL. *vs.* PETER P. CAREY.

Kennebec.   Opinion, October 19, 1946.

*Harvey D. Eaton,* for plaintiffs.

*F. Harold Dubord,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMPKINS, FELLOWS, JJ.

THAXTER, J. This action of trespass *quare clausum* was tried before a single justice without the intervention of a jury but with right of exceptions reserved. He entered judgment for the plaintiffs and the case is before us on the defendant's exceptions. The sole issue is the determination of the dividing line between the property of the plaintiffs and the property of the defendant in a certain land development known as College Avenue Heights in the City of Waterville.

A portion of this development includes lots 28 to 35 inclusive running easterly and westerly on the southerly side of Donald Street according to a plan made in August 1921 by Green & Wilson. Both parties trace their titles to deeds from D. W. Lanigan and L. J. Rosenthal who first developed the tract. By warranty deed dated September 3, 1921 Lanigan and Rosenthal conveyed lots 28 and 29 on the plan to George L. Chamberlain and Margarette Chamberlain who conveyed to the defendant, Peter P. Carey, by deed dated April 20, 1945. Each of these conveyances was made by lot numbers and there was no mention of metes or bounds, of courses or distances, or of monuments. June 23, 1923 Lanigan and Rosenthal deeded in a similar manner lot 30 to Walter Lint and subsequently on August 18, 1928 the easterly half of lot 31. By various conveyances, none of which mentioned metes or bounds, courses or distances, or monuments, title to lot 30 and the east half of lot 31 vested in the plaintiffs. According to the plan the frontage of lot 28 is 52.9 feet on Donald Street, lot 29 is 60 feet, and lot

30 is 50 feet. Measuring on the ground the distances called for by the plan from the easterly bound of lot 28 to the westerly bound of lot 35 there is a shortage of approximately six feet. It is this six feet which is in dispute between the parties. The plaintiffs claim that their easterly bound is six feet farther east than is called for by the defendant's deed. If they are correct in their contention, the width of lot 29 would be 54 feet instead of 60 feet as shown on the plan.

The sitting justice has found that when the Chamberlains acquired lots 28 and 29 in September 1921 there were wooden stakes such as surveyors use marking the boundary between lots 29 and 30 and that Chamberlain replaced these stakes with iron pins; that the pin on Donald Street remains in the same location as Chamberlain placed it; and that this pin marked the boundary as claimed by the plaintiffs. There was also a finding that this boundary was acquiesced in at least passively for over twenty years.

He ruled that the record title to the strip was in the defendant; that the plaintiffs, under the doctrine of *Landry* v. *Giguere*, 127 Me., 264, 143 A., 1, did not gain title to this strip by adverse possession; and that neither the parties nor any of their predecessors established the line marked by the stake by agreement. *Bemis* v. *Bradley*, 126 Me., 462, 139 A., 593. He also ruled on the authority of *Brown* v. *Gay*, 3 Me., 126, and *Thomas* v. *Patten*, 13 Me., 329, that if the original locations had been marked on the ground by the surveyor and such marking antedated the plan, such locations would control over the plan subsequently made. *Brown* v. *Gay*, supra; *Thomas* v. *Patten*, supra. With these rulings of law we agree.

The justice then proceeded to make the following finding of fact:

"Bearing in mind that the deed to Chamberlain from Lanigan and Rosenthal was dated September 3, 1921, that the wooden stakes were there at that time, and that the plan referred to in the deed was dated August 1921, and

is not in accord with the locus as it lies upon the face of the earth, it seems reasonable to infer that in this instance the survey was made and the monuments erected prior to the making of the plan; we so find.

"We further find, therefore, that the location of the boundary between lots 29 and 30 as claimed by the plaintiff is to be sustained."

Findings of fact by the justice hearing a case, if there is any evidence to support them, are conclusive, and exceptions do not lie. If on the contrary there is no evidence to support the findings, the error becomes one of law. *Chabot & Richard Co.* v. *Chabot,* 109 Me., 403, 84 A., 892. Mr. Green, in whose office the plan was made, does not tell when he made the survey; and he says nothing about placing any stakes or other markers in the ground. As a matter of fact there is no evidence that a survey was ever made on the land until very recently. We are completely in the dark as to how the wooden stakes got there. Chamberlain says that he replaced them with iron pins when he bought the land. To be sure, iron pins were found in the ground recently at points marking the line as claimed by the plaintiffs; but there is no assurance that they are in the same location as were the wooden stakes which Chamberlain removed. The only affirmative evidence on this point would indicate otherwise; for Chamberlain testified that the pin which he set marking the northwest corner was about six feet from the Lint house. If this were so, the line would be in the location claimed by the defendant.

In our opinion there is no evidence to support the inference drawn by the sitting justice that the wooden stakes were placed in the ground by the surveyor at the time of making a survey of the land, nor is there any evidence that a survey if made antedated the making of the plan. The inference seems to us based on conjecture rather than on proof.

*Exceptions sustained.*